## MADDUX *v.* DONALDSON.

1. AUTOMOBILES—SUDDEN EMERGENCY—STANDARD OF CONDUCT.

The actions of a motorist in a situation of sudden emergency not created by his own negligence are not to be judged in the light of hindsight as the law makes allowance for lack of calm judgment, for failure to adopt what subsequently and upon reflection may appear to have been the better method.

2. SAME—CONTRIBUTORY NEGLIGENCE—ONCOMING CAR—FOLLOWING CAR.

Issue of contributory negligence of eastbound plaintiff driver was question for jury, where he remained on the pavement, going at 35 to 40 miles an hour, instead of going out on the shoulder as westbound defendant traveling at speed of 80 to 100 miles an hour skidding sideways for distance of some 1,500 feet finally collided with plaintiffs who were then hit by eastbound car of defendant which had followed plaintiff on the wet pavement.

3. TORTS—SINGLE, INDIVISIBLE INJURY PRODUCED BY 2 PERSONS— JOINT AND SEVERAL LIABILITY.

Two persons who concur in producing a single indivisible injury are jointly and severally liable to the injured person although there was no common duty, common design, or concert of action.

4. AUTOMOBILES—CHAIN OF COLLISIONS—JOINT AND SEVERAL LIABILITY.

Plaintiffs whose eastbound car was first struck by a westbound car and almost simultaneously struck by a defendant's following eastbound car were not precluded from recovering from latter by reason of the fact that it was impossible to prove which collision caused which injuries, the tort-feasors being

REFERENCES FOR POINTS IN HEADNOTES

[1] 5A Am Jur, Automobiles and Highway Traffic § 211.
[2] 5A Am Jur, Automobiles and Highway Traffic § 1028.
[3, 5, 6] 52 Am Jur, Torts § 112.
[4] 5A Am Jur, Automobiles and Highway Traffic §§ 238–240.

jointly and severally liable for the entire damages sustained which are not allocable.

5. TORTS — CONCURRENT — SUCCESSIVELY INFLICTED INDIVISIBLE INJURIES.

The term "concurrent," as applied to tort-feasors whose negligence inflicted injuries upon plaintiff in such manner as to render jury unable to distinguish which harms were inflicted by the several tort-feasors, is not restricted to simultaneous negligent acts but includes closely successively inflicted injuries as well.

6. SAME — INDIVISIBLE INJURY — CONCURRENT NEGLIGENCE — DUE PROCESS.

The imposition of joint and several liability upon concurrently negligent tort-feasors for damages for the entire indivisible injuries sustained by blameless plaintiff which each defendant helped to create does not constitute a denial of due process of law (US Const, am 14; Mich Const 1908, art 2, § 16).

DETHMERS, C. J., and CARR and KELLY, JJ., dissenting.

Appeal from Oakland; Beer (William John), J. Submitted October 7, 1960. (Docket Nos. 44-46, Calendar Nos. 48,474-48,476.) Decided February 28, 1961. Rehearing denied April 26, 1961.

Case by Cheryl Lee Maddux, by her next friend, Fred Maddux, against William Donaldson and Paul Bryie for personal injuries received in multiple automobile collision. Similar actions by Velda Maddux and Fred Maddux for personal injuries, medical expense, and property damage. Cases combined for trial and on appeal. Actions discontinued by plaintiffs as to defendant Donaldson. Directed verdicts and order of dismissal resulting in judgments of no cause of action as to defendant Bryie. Plaintiffs appeal. Reversed and remanded for new trial.

*Riseman, Lemke & Piotrowski (Harry Riseman, of counsel), for plaintiffs.*

*Howlett, Hartman & Beier, for defendant Bryie.*

SMITH, J.   Once again[1] we consider the problem of damages when the car in which plaintiffs are riding is struck first by one automobile and then, almost simultaneously, by another.

The plaintiffs are Fred Maddux, his wife, and infant daughter.   They were driving in an easterly direction on US–112, near Clinton, Michigan, in a Ford pickup.   It had been raining and the pavement was wet.   Paul Bryie was following them, both cars traveling at speeds between 35 and 40 miles per hour. As the cars approached a bend in the road, Mr. Maddux observed a car some 1,500 feet away, skidding towards him, sideways, "in a swinging motion, in an arc" at a high rate of speed.   He tried to get beyond a certain point on the highway before the skidding car reached it but was unsuccessful.   The 2 cars collided, with extensive damage to both.

While plaintiffs' car was stopped, with its occupants injured, it was struck again almost immediately, this time by the car following.   Again the impact was substantial; Mr. Bryie considered his car to be a total loss.

The cases against the skidding driver, William Donaldson, were discontinued by plaintiffs.   The court subsequently dismissed the cases of Mrs. Maddux and her daughter against Mr. Bryie, the driver of the following car, on the ground that "there is no evidence of damage before this jury from which any inference can be drawn in relation to the responsibility of Paul Bryie."   Mr. Maddux's case was dismissed on the ground that he was guilty of contributory negligence as a matter of law.   We will first examine this aspect of the case.

At the time Mr. Maddux observed the car skidding sideways towards him it was about 1,500 feet distant, traveling in the arc of a curve, sideways, at a speed

---

[1] See *Meier* v. *Holt*, 347 Mich 430.

between 80 and 100 miles per hour. Plaintiff tried to avoid a collision by doing what he described as getting "beyond the tangent point in the radius" of the arc the oncoming car was traveling to. To do so, he remained on the highway. It is true that he might have taken to the shoulder, although there was a 12-foot ditch alongside, and thus, as it turned out, avoided collision. But at the time he made his decision he had no assurance that the skidding car would not itself leave the road. As a matter of hindsight, it would seem better not to have remained on the highway. But Mr. Maddux's actions are not to be judged in the light of hindsight. He was suddenly imperiled by a serious emergency not of his own making. In this situation, as we have so often held, the law makes allowance for lack of calm judgment, for failure "to adopt what subsequently and upon reflection may appear to have been a better method."[2] Whether or not Mr. Maddux was contributorily negligent as to the measures he took in the emergency was an issue for the jury, under proper instruction.

We now reach the problem of the plaintiff whose injuries have resulted from successive impacts, to all intents and purposes concurrent. This is one of the most baffling of our current legal problems,[3] critical because of the extensive use of expressways upon which large numbers of cars travel at high speeds in close proximity to one another. As to the issue presented, the courts are in the most serious conflict, our own Court dividing 3 ways among the

[2] *Socony Vacuum Oil Co.* v. *Marvin*, 313 Mich 528, 546.

[3] The literature is abundant and helpful. See Jackson, Joint Torts and Several Liability, 17 Tex L Rev 399; Wigmore, 17 Ill L Rev 458; Prosser, Joint Torts and Several Liability, 25 Calif L Rev 413. See, also, 27 Col L Rev 754 and 19 Calif L Rev 630. Annotations will be found in 9 ALR 939; 35 ALR 409; 91 ALR 759. Textual material in 65 CJS, Negligence, § 102, pp 639–645; 62 CJ, Torts, §§ 44, 45, pp 1130–1135; 38 Am Jur, Negligence, § 257, pp 946–948; 52 Am Jur, Torts, §§ 110–112, pp 448–454.

6 justices sitting the last time the issue was before us.[4] The difficulty arises from the fact that we do not have a "joint" tort in the ordinary sense of the word, and thus it is argued that there cannot be joint and several liability.[5] There has been no breach of any "joint" duty owed the plaintiffs by the 2 automobile drivers who successively collided with their car. Obviously the two did not act in concert. Nor is the joint enterprise doctrine applicable, nor master-servant, nor principal-agent. Actually what we have is injury to plaintiffs resulting from the independent and tortious acts of 2 tort-feasors.

There is authority, in this situation, that plaintiff must separate the injuries, ascribing some to one tort-feasor and the balance to the other, much as a housewife separates the colored and the white goods before laundering. Such authority concludes that if plaintiff cannot make such differentiation he cannot recover from either. This type of decision is well illustrated by the case of *Adams* v. *Hall* (1829), 2 Vt 9 (19 Am Dec 690). In this case an owner of sheep suffered loss to his flock through the depredations of 2 dogs. The owners he sued jointly. It was shown at the trial, however, that they were not joint owners. In addition, there was no testimony as to which dog killed which sheep. In approving a nonsuit it was held that neither owner was liable for the actions of the other's dog, merely because they "did the mischief in company."

However defensible such a result may have been in this and cases similar in principle in an agrarian economy shortly after the American Revolution (and even this is open to question) we do not regard it

---

[4] *Meier* v. *Holt*, 347 Mich 430.

[5] Plaintiff's counsel here asserts that he relies upon a joint and several liability. With reference to the case of the wife and daughter he asserted "I believe in the case of Cheryl and Velda Maddux that I should ask to have the question of joint and several liability submitted to the jury."

as precedent governing the liability of automobile owners in what are known as "chain collisions" on today's highways. It should be unnecessary to spell out the differences between the social problems presented or the judicial policies involved in their solution. When we impose upon an injured plaintiff the necessity of proving which impact did which harm in a chain collision situation, what we are actually expressing is a judicial policy that it is better that a plaintiff, injured through no fault of his own, take nothing, than that a tort-feasor pay more than his theoretical share of the damages accruing out of a confused situation which his wrong has helped to create.[6] The mere statement of the policy exposes its aberrations. It is at war with at least the last hundred years of judicial progress. It is, in addition, as Dean Wigmore has pointed out,[7] utterly inconsistent with the *ratio decidendi* of precedents going back at least to the year 1613[8] when the rule of joint and several liability dispensed with the necessity of plaintiff's proof of just which ruffian inflicted which injury when he was set upon by 3. The reason behind the rule was impossibility, the impossibility of plaintiff's proving the origin of each of his injuries. Where the same impossibility exists today, our sensitivity to plaintiff's injury should be no less than that of the king's bench to its plaintiff, whose "wounding (which in truth was in a cruel and barbarous manner) at Fakenham in Norfolk" was held to impose joint and several liability upon the defendants. It is clear that there is a manifest · unfairness in "putting on the injured party the impossible burden of proving the specific shares of harm done by each. * * * Such results are simply

---

[6] *Landers* v. *East Texas Salt Water Disposal Company*, 151 Tex 251 (248 SW2d 731).

[7] Wigmore, Joint Tort-feasors and Severance of Damages, 17 Ill L Rev 458.

[8] *Heydon's Case* (KB 1613), 11 Co Rep 5a (77 Eng Rep 1150).

the law's callous dullness to innocent sufferers. One would think that the obvious meanness of letting wrongdoers go scot free in such cases would cause the courts to think twice and to suspect some fallacy in their rule of law."[9]

The fallacy involved turns upon the word "divisible." In the case before us, at the conclusion of the 2 impacts, Mrs. Maddux suffered from a fracture of the right femur, of the left patella, and of the right radius ulna, in addition to multiple lacerations of the face. She had passed blood in her urine, suffered an eye injury, and, withal, came psychiatric difficulties, possibly "of an organic toxic basis." Are such injuries divisible? Theoretically, they may be, possibly they are. We may hypothesize situations in which some participant in the tragedy remains uninjured and observant, or in which the force and direction of the impacts are so markedly different that a reasonable allocation of harm to them may be made. But these cases would present no difficulty. The challenging situation is the one before us, involving 2 substantial impacts with multiple injuries, in respect of which a jury would be well justified in concluding that the plaintiff's various injuries, may not be identified as to origin. As a matter of fact it may be utterly unrealistic to insist that the plaintiff is suffering merely from a series of wounds, separable either legally or medically. Actually the plaintiff may suffer from a composite injury, the ingredients of which are impossible to identify in origin and impracticable to isolate in treatment. Thus in the case before us, was the blood in the urine the result of the first impact or the second? Will the psychiatric treatment be related to the fracture of the femur, or to the multi-

---

9 Wigmore, Joint Tort-feasors and Severance of Damages, 17 Ill L Rev 458, 459.

ple lacerations of the face, with its "jagged facial scars," or to the overall condition?

There is no need to write at greater length upon the various considerations involved in this type of problem in view of the examination given it by Mr. Justice BLACK in his concurring opinion in the recent case of *Meier* v. *Holt, supra.* It is our conclusion that if there is competent testimony, adduced either by plaintiff or defendant, that the injuries are factually and medically separable, and that the liability for all such injuries and damages, or parts thereof, may be allocated with reasonable certainty to the impacts in turn, the jury will be instructed accordingly and mere difficulty in so doing will not relieve the triers of the facts of this responsibility.[10] This merely follows the general rule that "where the independent concurring acts have caused distinct and separate injuries to the plaintiff, or where some reasonable means of apportioning the damages is evident, the courts generally will not hold the tort-feasors jointly and severally liable."[11]

But if, on the other hand, the triers of the facts conclude that they cannot reasonably make the division of liability between the tort-feasors, this is the point where the road of authority divides. Much ancient authority, not in truth precedent, would say that the case is now over, and that plaintiff shall take nothing. Some modern courts, as well, hold that this is merely the case of the marauding dogs and the helpless sheep relitigated in the setting of a modern highway. The conclusion is erroneous. Such precedents are not apt. When the triers of the facts decide that they cannot make a division

---

[10] "This does not mean that the question is always one of fact. Indeed, it is easy to conceive the case of chain vehicular pile-up where, as a matter of law, the last or next to last negligent motorist is shown as having caused no damage to the precedently injured plaintiff." *Meier* v. *Holt*, 347 Mich 430, 441 (BLACK, J., concurring).

[11] 1 Harper and James, Torts, § 10.1, at p 694.

of injuries we have, by their own finding, nothing. more or less than an indivisible injury, and the precedents as to indivisible injuries will control. They were well summarized in Cooley on Torts in these words: "Where the negligence of 2 or more persons concur in producing a single, indivisible injury, then such persons are jointly and severally liable, although there was no common duty, common design, or concert action."[12]   The Restatement is in accord.   Section 879 reads as follows:

"CONCURRING OR CONSECUTIVE INDEPENDENT ACTS.

"Except as stated in § 881 [referring to the apportionment of damages in a nuisance case], each of 2 persons who is independently guilty of tortious conduct which is a substantial factor in causing a harm to another is liable for the entire harm, in the absence of a superseding cause."[13]

The comment upon the above makes its meaning clear:

"A person whose tortious conduct is otherwise one of the legal causes of an injurious result is not relieved from liability for the entire harm by the fact that the tortious act of another responsible person contributes to the result.   Nor are the damages against him thereby diminished.   This is true where both are simultaneously negligent (see Illustration 1[14]) and also where the act of one either occurs or takes harmful effect after that of the

---

[12] 1 Cooley, Torts (3d ed), p 247.  See, also, Prosser, Torts (2d ed), p 226: "Where 2 or more causes combine to produce such a single result, incapable of any logical division, each may be a substantial factor in bringing about the loss, and if so, each may be charged with all of it   *   *   *   Entire liability rests upon the obvious fact that each has contributed to the single result, and that no rational division can be made."

[13] 4 Restatement, Torts, § 879.

[14] "1. A and B negligently collide, harming C, who is close to the scene of the accident.  C is entitled to a judgment for the full amount of the damages against either A or B or against both of them."

other (see Illustration 2[15]). It is immaterial that as between the two, one of them was primarily at fault for causing the harm or that the other, upon payment of damages, would have indemnity against him. It is also immaterial that the conduct of one was seriously wrongful while the conduct of the other was merely negligent or, indeed, blameless. Likewise it is immaterial that the liability of one is based upon common-law rules while that of the other is based upon a statute."

It is argued, with respect to the above, again quoting the section, that it does not apply "where one of the tort-feasors causes one harm and the other causes another and distinct harm." We agree. But such is not our case. As we have endeavored to make clear heretofore if, in truth, the jury is able to determine that one party has caused "one harm," and another "another and distinct harm," each will respond for the harm determined by the jury to have been caused by him and that injury alone. The problem before us does not arise if we have "distinct" harms. It is only where the jury is unable to distinguish the harms that difficulty arises.

It is pointed out, also, that one impact took place some 30 seconds after the other. The fact that one wrong takes place a few seconds after the other is without legal significance. What is significant is that the injury is indivisible. The blows of the ruffians referred to in *Heydon's Case, supra,* need not necessarily have fallen upon the victim at the same instant of time, and undoubtedly did not. The reason for the rule as to joint liability for damages was the indivisibility of the injuries, not the timing

---

[15] "2. A negligently knocks B into the street, the impact causing B no substantial harm. Before B can arise, however, he is negligently run over by C who is acting in the scope of his employment as D's servant. B is severely hurt thereby. For this harm B is entitled to a judgment for the entire amount of harm from A, C or D or all of them."

of the various blows. As a matter of fact, a dis-
tinguished English authority has stated that con-
currence, in the law of torts, has no reference to
time, except that both torts must precede the dam-
age.[16] Carefully reasoned American cases fully sup-
port this view.[17] The conclusion seems inescapable
unless we take the position that "concurrent" actu-
ally means "simultaneous," a position for which there
is no well-reasoned authority.

There is no constitutional objection to the imposi-
tion of joint and several liability upon concurrent
tort-feasors. It is true, as is argued, that no one
may be deprived of his life, liberty, or property
without due process of law.[18] But it is not clear
how this operates to deny a plaintiff, who has suf-
fered manifold deprivations of his own, and without
his fault, any recovery whatever against the 2 tort-
feasors who injured him. At least, however, the
argument puts the issues squarely before us. Is it
better, as we asked heretofore, that a plaintiff, in-
jured through no fault of his own, take nothing,
rather than that a tort-feasor pay no more than his
theoretical share of the damages accruing out of a
confused situation which his wrong has helped to
create? Where property is concerned, e.g., where a
defendant has confused the goods of another with
his own, the holding is threadbare that the defend-
ant must prove which goods are his or all will be
awarded to the plaintiff.[19] Are we to be less solici-
tous because the confusion wrought by defendants
involves human injury? Many years ago, a Justice,
in speaking for this Court, put a pregnant question.
He asked, in a case in which joint liability in tort

---

[16] Williams, Joint Torts and Contributory Negligence (1951), p 2.
[17] E.g., Hill v. Peres, 136 Cal App 132 (28 P2d 946).
[18] See US Const, am 14; Mich Const 1908, art 2, § 16.—REPORTER.
[19] E.g., Stone v. Marshall Oil Company, 208 Pa St 85 (57 A 183, 65 LRA 218, 101 Am St Rep 904).

was urged, whether or not the plaintiff "who has thus suffered the wrong" was entitled to a remedy, or whether "the difficulties and dangers [of the suit] are to be thrown upon those presumably in the wrong rather than upon him who was not in fault?" He continued "If in either view injustice is likely to be done, should not the defendants assume or be charged with the risk? Is there, however, likely to be any injustice done in holding them jointly liable? I think not." [20] Nor do we.

Here, then, is the essence of the problem—Where is the likelihood of injustice? We think it is in denying the blameless victim of traffic chain collision any recovery whatever. We perceive no reason why his tort-feasors should escape liability because of the very complexity of the injury created by their wrong.

There is no merit in additional points raised. The case is reversed and remanded for new trial. Costs to appellants.

BLACK, EDWARDS, KAVANAGH, and SOURIS, JJ., concurred with SMITH, J.

CARR, J. (*dissenting*). The principal question at issue in these cases is whether a defendant in an action to recover damages for numerous personal injuries suffered in successive accidents may be held liable in the absence of proof that such injuries were caused proximately by his negligent or otherwise wrongful act. The instant cases resulted from an accident occurring July 15, 1956, on US–112 a few miles from the village of Clinton. The traveled portion of the highway was a 2-lane blacktop road. It was a rainy day and the pavement was wet. The record indicates that it was nearly dark at the time of the occurrence.

---

[20] *Cuddy* v. *Horn* (1881), 46 Mich 596, 603 (41 Am Rep 178).

Plaintiff Fred Maddux was driving a Ford pickup in an easterly direction on the highway in question, his wife and young daughter being in the car with him. Defendant Bryie was following the Maddux car, the speed of each vehicle being between 35 and 40 miles per hour. As Mr. Maddux was approaching a curve in the road he noticed some distance ahead of him an Oldsmobile car driven by defendant Donaldson, approaching at a high rate of speed and from 1,500 to 2,500 feet away at the time. Said car was skidding sideways. He continued on his course, however, and a collision occurred on the pavement. Approximately 30 seconds later, according to the testimony of Mr. Maddux, the automobile of Mr. Bryie ran into the rear of the Maddux truck. Each of the 3 plaintiffs suffered numerous injuries and actions for damages were instituted. The cases were tried together in circuit court and have been submitted in like manner on this appeal.

It appears from the pretrial statement of the circuit judge, and also from an opinion filed by him in the cases, that each of the plaintiffs dismissed as to defendant Donaldson, apparently for the reason that the latter's insurance carrier was insolvent, that receivership proceedings had been instituted against it, and that each plaintiff had filed a claim therein. In consequence the cases were tried against defendant Bryie alone. At the conclusion of the testimony the trial judge granted defendant's motion to dismiss the cases brought by Mrs. Maddux and the daughter on the ground that there was no testimony before the jury on which a finding could be based that the negligence of defendant Bryie was the proximate cause of any part of the injuries sustained by either of said plaintiffs, or of the aggravation thereof.

A motion to dismiss the case brought by Mr. Maddux was also submitted on the ground that he was

guilty of contributory negligence as a matter of law in deliberately proceeding in the face of an obvious danger. The trial judge concluded that the testimony clearly indicated the contributory negligence charged, and the motion was granted. The 3 plaintiffs have appealed. On behalf of Mrs. Maddux and the daughter it is argued that the cases should have been submitted to the jury on the theory of joint and several liability on the part of Donaldson and Bryie, and that the latter should have been held liable for the payment of damages for all of the injuries sustained by said plaintiffs in the 2 collisions. On behalf of Mr. Maddux it is insisted that whether he was guilty of contributory negligence was a matter for determination by the jury.

The rule has been consistently recognized in Michigan, as well as in other States, that a tort-feasor may not be held liable for damages for an injury not caused by such defendant's wrongful conduct. In 15 Am Jur, Damages, § 13, p 404, it is said:

"A defendant is liable only to the extent to which his acts have caused the injury complained of, and it follows that separate wrongs done by independent agents cannot be joined together to increase the responsibility of one of the wrongdoers, notwithstanding any difficulty there may be in determining what part of the injury or loss was the result of the acts or omissions of the defendant, and what part was the result of other causes."

In *Rodgers* v. *Canfield*, 272 Mich 562, an action for damages for malpractice was brought against 2 physicians. The testimony indicated that 1 of said physicians had not participated in all of the alleged acts of malpractice charged against the other. The trial court, however, directed the jury to return a verdict against both defendants for the full amount of the damages shown. This Court reversed on the

ground that the defendant whose participation was partial only could not be held liable for the acts of the other defendant in which he did not take part.

In *Cassidy* v. *Kraft-Phenix Cheese Corp.,* 285 Mich 426, 438, 439, it was declared that:

"The damage recoverable in consequence of a tort is only such as is the direct result of the tort, *i.e.,* damage of which the tort is the proximate cause." (Citing cases.)

Of like import is *Witheral* v. *Muskegon Booming Company,* 68 Mich 48 (13 Am St Rep 325), which recognized the general rule that the defendant was not liable for the independent acts of third parties.

It will be noted that we are not dealing in these cases with the possible liability of a first tort-feasor for injuries sustained by plaintiff as the result of subsequent acts by others. Conceivably the facts in such a case might justify the conclusion that the first wrongdoer's conduct had set in motion a chain of circumstances, that should have been foreseen by him, involving the theory of continuing negligence or other sufficient reason for not applying the doctrine of subsequent independent acts of negligence on the part of another. Neither do we have a case of joint tort-feasors or of concurrent acts by 2 or more parties resulting in an injury. As plaintiff Fred Maddux testified, approximately 30 seconds elapsed between his collision with the Donaldson car and the subsequent impact by the automobile of defendant Bryie. A number of injuries were sustained by each of the parties, but the proofs failed to indicate what specific injuries were caused by each impact. In fact, there was a dearth of proof that defendant Bryie, with whose liability we are solely concerned in the instant cases, was responsible for any of the injuries sustained by Mrs. Maddux or the daughter.

In the case of *Young* v. *Dille,* 127 Wash 398 (220
P 782), the facts involved were very similar to those
in the cases now before us. It was the claim of the
plaintiff that defendant Dille negligently ran into
plaintiff's vehicle, causing it to change its course so
that it came to a stop on the opposite side of the
street where it was hit by a truck driven by the
defendant Harris. Under instructions from the trial
court the jury returned verdicts against both de-
fendants. In granting a new trial on the ground
that the proofs did not sustain such verdicts, it was
said (pp 404, 405):

"The cause seems to have been tried in the court
below on the theory that the defendants Dille and
Harris were joint tort-feasors. But it seems to us
manifest that they were not such, either if the facts
be considered from the allegations of the complaint
or by the proofs shown at the trial. To be joint
tort-feasors, the parties must either act together
in committing the wrong, or their acts, if independent
of each other, must unite in causing a single injury.
Neither of these conditions were here present. The
allegations and the proof are that Dille by one act
of negligence caused the appellant certain injuries,
and, that Harris, after the commission of this act
of negligence, by an independent act of negligence
caused him further and additional injuries. The
acts have no relation to each other except nearness
in time. But time is not a determinative considera-
tion. If the acts are not joint in fact, or, if the acts
do not unite in causing a single injury, they are
as widely separated in law by the lapse of moments
as they would be were they separated by the lapse
of hours or days. Plainly, under the conditions here
shown neither of the actors in the wrong could be
responsible for the injuries caused by the other.

"The jury, therefore, sensed the true situation
when they made separate findings against the de-
fendants. But the fault in the verdict lies in the

fact that the evidence did not justify the findings. A part of the injuries for which recovery was sought was the destruction of the automobile. This was destroyed in part by the act of Dille and in part by the act of Harris. The injuries caused by each was capable of somewhat definite measurement, yet there was no attempt at measurement, and the jury could do no more than guess as to the extent of the damages each of the wrongdoers severally caused."

As before noted, in the cases at bar there was no testimony introduced from which a jury might conclude that injuries sustained by Mrs. Maddux or by 'the daughter resulted from defendant Bryie's negligence. The motion was predicated on the lack of proof, and the trial judge made his ruling accordingly. In the case above cited it appears that there was evidence as to certain elements of damage caused by each defendant, but the proofs were insufficient to sustain the verdict as rendered.

This Court in several prior cases has considered the question here involved. The decision in *Frye v. City of Detroit,* 256 Mich 466, indicates the rule of law that has been uniformly observed. There action was brought to recover for personal injuries resulting in the death of plaintiff administrator's decedent. It appears that the injured party was standing in a safety zone waiting for a streetcar, was struck by an automobile, and thrown upon the tracks of the defendant city where he was struck by a streetcar. Suit was brought against the owner and driver of the automobile, as well as against the city, but no service of summons was had on the individual defendants. The proofs on the trial failed to show whether the death was caused by the automobile or by the streetcar. In commenting on the situation, and affirming the directed verdict for the city, it was said (pp 469, 470):

"It is a well-established rule that, in order for plaintiff to recover against the city, it was necessary to show the negligence of defendant city and the proximate cause of death. Upon the second issue plaintiff did not, and could not, inform the jury of the injuries inflicted by the streetcar or those inflicted previously by the automobile. It was necessary for plaintiff to submit proof, from which the jury could draw the reasonable inference that the death of plaintiff's decedent would not have occurred but for the negligence of defendant city. The plaintiff must go beyond showing that such might have been the case.

"The rule, in negligence cases, is well stated in *Ramberg* v. *Morgan,* 209 Iowa 474 (218 NW 492):

" 'True, it was not necessary for plaintiff to prove the causal connection by direct evidence, but substantial evidence must be furnished upon which a reasonable basis for inference may be made. The proof must establish causal connection beyond the point of conjecture. It must show more than a possibility. Verdicts must rest upon reasonable certainty of proof. Where the proof discloses that a given result may have occurred by reason of more than 1 proximate cause, and the jury can do no more than guess or speculate as to which was, in fact, the efficient cause, the submission of such choice to the jury has been consistently condemned by this Court and by other courts.' "

A similar factual situation was involved in *De Witt* v. *Gerard,* 274 Mich 299, to that in the *Frye Case,* the plaintiff being struck by an automobile and thrown upon the streetcar tracks or in proximity thereto. He was then further injured by a streetcar. The action was brought against both the automobile driver and the city, plaintiff submitting to a nonsuit as to the former. The trial court directed a verdict in favor of the city but this Court concluded from the testimony in the case that plaintiff had suffered

certain injuries inflicted on his person by the street-car, and that the question of allowing damages therefor should have been submitted to the jury. As the trial court correctly found, there is no such testimony in the instant cases as to the liability of defendant Bryie. The recent decision of *Meier* v. *Holt,* 347 Mich 430, is in accord with the prior cases. As in the cases at bar, the acts of negligence of the defendants were not concurrent nor was there a single indivisible injury.

As before noted, it is claimed on behalf of appellants that this Court should now adopt the rule that in a case of this nature involving successive acts by claimed tort-feasors with injuries resulting to a plaintiff the defendants should be considered as jointly and severally liable to respond in damages for all injuries sustained. Mr. Justice SMITH, in writing for reversal of the cases now before us, recognizes the rule that where distinct and separate injuries have resulted from independent acts of 2 or more tort-feasors each should be held liable to respond for the results of his own wrongdoing, assuming that the proofs provide a sufficient basis for the trier of the facts to apportion the damages between or among the defendants. In the event, however, that the proofs, as in the instant cases, do not furnish a basis for such allocation of damages as against the defendants it is contended that the injuries received should be considered as a single indivisible injury and the defendants held jointly and severally liable on the theory that they are guilty of concurring acts of negligence or other wrongdoing. Such theory would lead to the conclusion in the instant cases that defendant Bryie may have judgment entered against him for the full amount of the damages for the injuries sustained by Mrs. Maddux and the daughter. Justice SMITH would reverse and remand for final disposition in accord-

ance with his suggested solution of the problem before us.

We are not in accord with such conclusion. Basically, it is inconsistent with the general rule that liability may not be imposed in a tort action of this character unless the injuries for which the recovery of damages is allowed resulted proximately from the wrongful conduct of the defendant so required to respond. The application of such theory would obviously result in relieving a plaintiff bringing action against 2 or more successive tort-feasors of the duty of proving his case against each in order to be entitled to recover damages therefrom. Under ordinary circumstances at least a plaintiff might consider that a joint and several judgment against both or all of the defendants would be preferable to separate recoveries against them based on evidence. This might well result in forcing a defendant to assume the burden of showing liability of one of his codefendants in order to avoid a judgment against himself.

Attention has been called to the following quotation from 1 Cooley on Torts (4th ed), § 86, pp 277, 278:

"The weight of authority will, we think, support the more general proposition, that, where the negligences of 2 or more persons concur in producing a single, indivisible injury, then such persons are jointly and severally liable, although there was no common duty, common design or concerted action."

It will be observed that the statement quoted refers to *concurrent* acts of negligence where the result is a *single indivisible injury*. Such is not the situation in the cases at bar. Each plaintiff received a number of injuries and the acts of Donaldson and Bryie were not concurrent. There was an interval of time between the collision of the Maddux car with

Donaldson's automobile and the subsequent impact resulting from defendant Bryie's vehicle running into the rear of the Maddux car. The balance of the section from which the above quoted language is taken indicates clearly that the textwriter was referring solely to the liability of concurrent tort-feasors whose acts had produced a single indivisible injury. The cases cited in support of the text, including *Young* v. *Dille, supra,* emphasize the application of the rule stated. Among such cases is *Weingand* v. *City of North Platte,* 108 Neb 17 (187 NW 90). Involved there was the question of liability on the part of several defendants guilty of diverting rainwater from the roofs of their buildings into an overloaded sanitary sewer in violation of a municipal ordinance. Plaintiff claimed that the basement of the hotel that he was operating was flooded and, in consequence, that he was damaged by the acts of the several defendants and entitled to equitable relief. In deciding the issues raised in plaintiff's favor it was held the defendants, while not acting in concert, were liable, their concurrent acts of wrongdoing having resulted in a single injury.

Justice SMITH has also referred to the rule stated in 4 Restatement, Torts, § 879, to the effect that "each of 2 persons who is independently guilty of tortious conduct which is a substantial factor in causing a harm to another is liable for the entire harm, in the absence of a superseding cause." The discussion of the rule and the illustrations given in the comment thereon clearly suggest that the reference is to concurrent conduct of tort-feasors resulting in a single injury. The following paragraph seems to make this interpretation quite clear:

"The rule stated in this section does not apply where 1 of the tort-feasors causes 1 harm and the other causes another and distinct harm. Nor does

the rule apply where a person causes a harm which is aggravated by another; while each of the 2 tortfeasors is liable for the harm he causes, the joint liability is limited to the aggravation. In such cases both may be liable for the harm caused by the aggravation, but the second tort-feasor is not liable for the original harm."

Such comment clearly indicates the scope of the rule and its nonapplication to a situation of the character involved in the cases at bar.

There is another aspect of the situation before us that merits consideration. The Fourteenth Amendment to the Federal Constitution forbids any State to "deprive any person of life, liberty, or property, without due process of law." The Constitution of Michigan, art 2, § 16, contains a like inhibition. The query is suggested, if a defendant in a case of the nature under consideration is adjudged to pay damages for injuries not shown to have been caused by wrongful conduct attributable to him, does such result comport with the basic requirement pertaining to due process of law? If appellants are correct in their claim that they are entitled to judgment against defendant Bryie for damages for all injuries sustained in the successive automobile collisions in the absence of proof sufficient to support a finding that defendant Donaldson was alone responsible for certain of said injuries, the obvious result is that defendant Bryie will be forced to pay damages for injuries not shown to have been caused by his own wrongful act or by the act of another under such circumstances as to be attributable to him. Such a situation is not comportable with due process.

In the comparatively recent case of *Thompson* v. *City of Louisville,* 362 US 199 (80 S Ct 624, 4 L ed 2d 654), the supreme court of the United States had before it an unusual situation involving the matter of due process under the Fourteenth Amendment.

Appellant Thompson was convicted in the police court of the city of Louisville of offenses referred to as loitering and disorderly conduct. He was fined $10 on each charge. It was his contention that there was no proof in the case tending to show that he had committed either of said offenses. Having no remedy in any Kentucky court other than the court in which he was tried, he sought review on certiorari in the Federal supreme court. Because of the unusual situation the writ issued and the court after reviewing the record upheld Thompson's contention, saying (p 206):

"Thus we find no evidence whatever in the record to support these convictions. Just as 'conviction upon a charge not made would be sheer denial of due process,' so is it a violation of due process to convict and punish a man without evidence of his guilt."

By like process of reasoning the conclusion follows that to compel one to respond in damages because of injuries not shown by proof to be attributable to him involves a denial of due process. The trial judge was right in granting defendant Bryie's motions in the cases of Mrs. Maddux and the daughter.

This brings us to the question whether the evidence indicated with the requisite degree of clarity that plaintiff Fred Maddux was guilty of contributory negligence barring recovery. In a written opinion filed by the trial judge he summarized his conclusion as follows:

"Fred Maddux saw the obvious danger of the Donaldson car, out of control, coming and careening towards him, at a distance away from him of from 1,500 to 2,500 feet down the highway. He did not stop. He could have stopped. He drove on towards a clearly seen danger, and took a chance on dodging the Donaldson car. His decision was unfortunate for himself and many persons. He was not confront-

ed with an emergency in making his decision. He deliberately drove on and contributed to the creation of a real emergency. I rule he is guilty of legal negligence."

Mr. Maddux, as a witness in his own behalf, testified as follows:

"*Q.* Your recollection is that the car was ahead of you down the road.

"*A.* Yes, coming.

"*Q.* You say it was swinging. Was it skidding sideways?

"*A.* It was coming in a gradual arc, sideways down the road.

"*Q.* It never went off the road, did it?

"*A.* No, it was on the pavement.

"*Q.* I think you said what you did was to try to pass the point of the arc before that car got to you?

"*A.* That is right.

"*Q.* You thought if you could get up past that arc he would miss you?

"*A.* Yes, sir."

A trooper of the Michigan State police investigated the accident shortly after it occurred, going from the Clinton State police post. He testified that the Maddux car and the Bryie car were in the eastbound lane, that there was a shoulder on each side of the road, and that he did not recall that any portion of either of said cars was on the shoulder. Whether after observing the skidding automobile some 1,500 to 2,500 feet ahead of him Mr. Maddux changed his rate of speed does not appear. As before noted, the testimony indicates that he had been driving at a rate of 35 to 40 miles per hour. It is not questioned that he realized that the Donaldson automobile was out of control, and it must have been obvious to him that if he continued on the pavement he might be struck by it and equally obvious that the danger would be increased by his continuing to drive towards

the skidding automobile before him. Nonetheless that is precisely what he did instead of taking to the shoulder of the road and stopping his car, or reducing its speed to a nominal rate.

Without discussing the matter in detail it must be said that he did not exercise for his own safety and the safety of his wife and daughter the degree of care that a reasonably careful man would have exercised under the same circumstances. He took a chance that he might escape the oncoming danger, but under the circumstances taking such a chance was clearly negligence that contributed to the accident. Mr. Maddux had an opportunity to consider the matter and reach a determination as to the proper course to follow. It may be inferred that he was an experienced driver. He was 44 years old at the time of the trial. The trial judge was not in error in holding him barred by his contributory negligence from recovering damages against defendant Bryie.

The judgments from which the appeals have been taken should be affirmed.

DETHMERS, C. J., and KELLY, J., concurred with CARR, J.

BLACK, J. (*concurring*). With advent of modern motor transit and traffic, the courts of the States are regularly confronted with a new and progressively vexing problem, that of instructing juries properly when a provenly innocent plaintiff is shown as having been injured in the course of multiple or chain vehicular collisions caused by 2 or more negligent motorists.

This case, unlike *Meier* v. *Holt*, 347 Mich 430, in fact (see footnote pp 440, 441 of *Meier's* report), is one where it cannot "certainly" be said that the injuries suffered by each plaintiff would have resulted, absent concurrence of the successive negligent acts

·of Donaldson and Bryie. Such fact brings into play Judge Cooley's summary of that which Justices Smith and Carr do not with usual eurythmics see eye to eye upon. I refer to the following (quoted in *Meier,* pp 438, 439):

"Although it is not always definitely so stated the rule seems to have become generally established that, although there is no concert of action between tort-feasors, if the cumulative effect of their acts is a single, indivisible injury, which it cannot certainly be said would have resulted but for the concurrence of such acts, the actors are to be held liable as joint tort-feasors; whereas, if the results, as well as the acts, are separable, in theory at least, so that it can be said that the act of each would have resulted in some injury, however difficult it may be as a practical matter to establish the exact proportion of injury caused thereby, each can be held liable only for so much of the injury as was caused by his act."   1 Cooley on Torts (4th ed), § 86, pp 279, 280.*

Having signed Mr. Justice Smith's opinion in this case, I would openly avow what was, and what is to be. Until now the Michigan rule has been settled. Where 2 or more wrongdoers separately cause the plaintiff to suffer an unknown or uncertain part or portion of the damages he has shown, each— hitherto—stood responsible to the plaintiff only for the harm caused by his tort, however difficult it may have been to establish the same. *Albrecht* v. *St. Hedwig's Roman Catholic Benevolent Society,* 205 Mich 395; *Frye* v. *City of Detroit,* 256 Mich 466; *De Witt* v. *Gerard,* 274 Mich 299; *De Witt* v. *Gerard,* 281 Mich 676; *Meier* v. *Holt,* 347 Mich 430.

In the past we have differed not upon the rule but upon its admittedly difficult application. See *Meier,* page 439. Now we affirm that, where the trier or

---

* This passage follows, almost immediately, the Cooley quotation Justices Smith and Carr have considered in their respective opinions.

triers of fact find they cannot ascertain the amount of damages each wrongdoer has inflicted, then such trier or triers are authorized to assess the plaintiff's damages against any one or all of such wrongdoers on ground that the latter have—in law—participated in the infliction of "a single, indivisible injury." This, it seems to me, is the only way to avoid the difficulties of our present rule.

These sentiments are recorded solely that lawyers may know that the former rule is now definitely modified to the extent, and only to the extent, we now attest by majority vote. Otherwise such former rule remains in full force.