[No. 27396-5-I.   Division One.   September 8, 1992.]

SHERRY GERRARD, *Plaintiff*, v. JACK CRAIG, ET AL,
*Appellants*, EDWARD M. LAWSON, ET AL,
*Respondents*.

*Keith A. Bolton* and *Petersen, Lycette & Snook P.S.,* for appellants.

*Sidney R. Snyder, Jr.,* and *Merrick, Hofstedt & Lindsey,* for respondents.

KENNEDY, J. — Appellants Jack Craig and Immaculate Lupis appeal the trial court's summary dismissal "with prejudice" of their claim for contribution against respondent Edward Lawson and the court's subsequent denial of their motion to set aside the summary dismissal. We reverse and remand for a resolution of appellants' contribution claim.

I

This appeal arises out of a multicar accident on October 26, 1985. A car owned by appellant Craig and being driven by appellant Lupis rear-ended a car in which the plaintiff Sherry Gerrard was a passenger. With no appreciable lapse of time, respondent Lawson then rear-ended the car driven by Lupis, causing it again to strike the vehicle in which Gerrard was riding. It is undisputed that Gerrard was without fault with respect to the accident.

On October 11, 1988, Gerrard filed a complaint naming Craig, Lupis and Lawson as defendants. In their answer filed on October 25, 1988, Craig and Lupis cross-claimed against Lawson, seeking contribution. Lawson answered the cross claim on April 26, 1989. In his answer, Lawson raised the affirmative defense of insufficiency of service of process.[1]

On August 29, 1989, Lawson filed a motion for summary judgment seeking dismissal with prejudice of all claims asserted against him. Lawson based his motion on the fact that Gerrard had not properly served him and that the statute of limitations as to her claim had run. Lawson argued that because Gerrard had never properly served him the court had never acquired jurisdiction over him and that consequently the cross claim by Craig and Lupis should also be dismissed. Lawson argued that *all* claims should be dismissed with prejudice because the statute of limitations had run on *Gerrard's* claim.

Gerrard defended against the motion for summary judgment. Her defense was limited to her own claim against

---

[1]Gerrard never personally served Lawson; rather, she attempted service by publication. Craig and Lupis served their cross claim upon Lawson's attorney and did not personally serve Lawson.

Lawson. Craig and Lupis did not file any response to the motion for summary judgment and did not appear at the hearing to oppose the motion.[2] On September 20, 1989, the court granted summary dismissal of all claims against Lawson, with prejudice, including the cross claim for contribution. The order did not contain any finding of "no just reason for delay". *See* CR 54(b); RAP 2.2(d).

The litigation proceeded without Lawson. Gerrard arbitrated her claim against Craig and Lupis. On June 27, 1990, an arbitration award was entered in Gerrard's favor for the sum of $28,939.91. Appellants initially sought a trial de novo; however, on November 5, 1990, a stipulated judgment was entered in favor of Gerrard and against Craig and Lupis for the sum of $18,923.[3]

On August 16, 1990, appellants filed a motion requesting the trial court to set aside that portion of the September 20, 1989, summary judgment order which dismissed their cross claim for contribution with prejudice. Appellants argued that they were entitled to seek contribution from Lawson. On September 4, 1990, the court entered an order denying appellants' motion.

Appellants appeal the summary "with prejudice" dismissal of their claim for contribution and the subsequent order denying their motion to set aside that portion of the summary judgment order by which their claim for contribution was dismissed with prejudice.[4]

---

[2]The record for this appeal contains no indication of the reason for the appellants' failure to defend against the motion for summary judgment.

[3]The record contains no explanation for the $10,016.91 difference between the amount of the arbitration award and the amount of the stipulated judgment.

[4]We need not decide whether the contribution claim was properly dismissed for lack of personal jurisdiction over Lawson. Rather, the issue we must decide is whether it was proper to dismiss the claim "with prejudice", in view of the provisions of RCW 4.22.050(3) and the Supreme Court's decision in *Smith v. Jackson*, 106 Wn.2d 298, 721 P.2d 508 (1986).

## II

Lawson contends that the appellants have waived their right to appeal the "with prejudice" dismissal of the contribution claim by their initial failure to contest his motion for summary judgment. We disagree, for three reasons.

■ First, the issue falls squarely within the exception to the general waiver rule set down in *New Meadows Holding Co. v. Washington Water Power Co.*, 102 Wn.2d 495, 687 P.2d 212 (1984). In *New Meadows*, the occupant of a dwelling owned by New Meadows unwittingly ignited natural gas which was leaking from a damaged gas line several blocks away. The dwelling was destroyed in the resulting explosion. New Meadows brought suit against several defendants, one of whom brought separate motions for summary dismissal against New Meadows and a cross-claiming codefendant. At issue was whether the statute of limitations had expired with respect to New Meadows' claim and with respect to the nonmoving codefendant's cross claim against the moving defendant. The cross-claiming codefendant contested the motion but New Meadows did not. Both motions for dismissal were granted. Division Three of the Court of Appeals affirmed the summary dismissal of New Meadows' complaint, ruling that its failure to contest the motion amounted to a waiver. The Supreme Court reversed, stating:

> Failure to raise an issue before the trial court generally precludes a party from raising it on appeal. This rule affords the trial court an opportunity to rule correctly upon a matter before it can be presented on appeal. However, this rule does not apply when the question raised affects the right to maintain the action.
>
> Since to deem New Meadows' failure to appear as a waiver affects its right to maintain the action, New Meadows' claim falls squarely under the exception to the general rule.

(Citations omitted.) *New Meadows*, 102 Wn.2d at 498.

■ Second, here, the trial court was given an opportunity to rule on the issues raised by Craig and Lupis in this appeal. Those issues were briefed and argued for the hearing on appellants' motion to set aside that portion of the order of summary judgment which dismissed their contribution claim with prejudice. Accordingly, the trial court was

given an opportunity to rule correctly on the issues now before this court. *Cf. New Meadows*, 102 Wn.2d at 498-99.

Finally, CR 56(e) provides that, when the adverse party does not properly respond to a motion for summary judgment, "summary judgment, *if appropriate*, shall be entered against him." (Italics ours.) Even if the adverse party fails to contest the motion the court still must determine if the grant of summary judgment is legally "appropriate" before entering an order. *See Graves v. P.J. Taggares Co.*, 94 Wn.2d 298, 302, 616 P.2d 1223 (1980) (holding that if the moving party fails to establish entitlement to summary judgment as a matter of law, judgment should not be entered even if the adverse party has failed to contest the motion). Here, as shall be demonstrated in the next section of this opinion, Lawson was not entitled, as a matter of law, to a dismissal "with prejudice" of appellants' contribution claim. Accordingly it was error to dismiss the contribution claim "with prejudice" and the motion to set aside that portion of the summary judgment order should have been granted, even though appellants failed to contest the initial motion.

## III

With respect to the merits of this appeal, the underlying question is whether Craig and Lupis, who claim to have paid more than their proportionate share of Gerrard's indivisible claim for damages, have the right to seek contribution from Lawson. Under both the 1981 and 1986 tort reform acts, one commentator has concluded that:

> The *potential* for joint and several liability between the settling and released, non-settling defendant is all that is needed to create a right to seek contribution. The mere possibility that subsequent determinations might actually establish, or hypothetically have established, that they were only severally liable does not defeat that right.

Harris,[5] *Washington's 1986 Tort Reform Act: Partial Tort Settlements After the Demise of Joint and Several Liability*, 22 Gonz. L. Rev. 67, 84 (1986-1988). We agree.

---

[5] Mr. Harris, who is a shareholder in Merrick, Hofstedt & Lindsey, P.S., the law firm representing Lawson, has not participated in this appeal.

Lawson argues that, at the time Craig and Lupis settled with Gerrard, there was no possibility whatsoever, on the undisputed facts of this case, that Craig and Lupis could ever be found to be jointly and severally liable for Lawson's proportionate share of Gerrard's damages. Lawson argues that this is so because no judgment in Gerrard's favor could ever be entered against Lawson, the statute of limitations having run on her claim against him. Thus, Lawson contends, under RCW 4.22.070, Craig and Lupis are severally liable only, for their own proportionate share of the fault and for their own proportionate share of the claimant's damages, as a matter of law.

RCW 4.22.070 provides in relevant part as follows:

(1) *In all actions involving fault of more than one entity, the trier of fact shall determine the percentage of the total fault which is attributable to every entity which caused the claimant's damages*, including the claimant or person suffering personal injury or incurring property damage, defendants, third-party defendants, entities released by the claimant, entities immune from liability to the claimant and entities with any other individual defense against the claimant. *Judgment shall be entered against each defendant* except those who have been released by the claimant or are immune from liability to the claimant or have prevailed on any other individual defense against the claimant *in an amount which represents that party's proportionate share of the claimant's total damages. The liability of each defendant shall be several only and shall not be joint except*:

(a) A party shall be responsible for the fault of another person or for payment of the proportionate share of another party where both were acting in concert or when a person was acting as an agent or servant of the party.

(b) If the trier of fact determines that the claimant or party suffering bodily injury or incurring property damages was not at fault, *the defendants against whom judgment is entered shall be jointly and severally liable for the sum of their proportionate shares of the claimant[']s total damages.*

(2) If a defendant is jointly and severally liable under one of the exceptions listed in subsections (1)(a) or (1)(b) of this section, such defendant's rights to contribution against another jointly and severally liable defendant, and the effect of settlement by either such defendant, shall be determined under RCW 4.22.040, 4.22.050, and 4.22.060.

(Italics ours.) Enacted by Laws of 1986, ch. 305, § 401.

Lawson argues that, if Gerrard's claim against Craig and Lupis had been fully litigated, under RCW 4.22.070 the trier of fact would have determined the percentage of the total fault which is attributable to Craig/Lupis[6] and to Lawson, it being undisputed that the claimant, Gerrard, is without fault. Assuming a verdict as to liability in favor of Gerrard (a reasonable inference based on the heavy duty our law places upon following drivers to avoid colliding with vehicles ahead), the trier of fact would have determined Gerrard's total damages. Lawson contends that the trial court then would have entered judgment against Craig and Lupis for their proportionate share of the damages. Their liability would have been several only, Lawson contends, and not joint, because none of the exceptions set down in subsections (1)(a) or (1)(b) apply to this case. Subsection (1)(a) does not apply because, although Lawson is "another person" as described in that section, he and Lupis were not "acting in concert"; nor was Lawson acting as an agent or a servant of Craig or Lupis. Lawson further contends that subsection (1)(b) does not apply because, although Gerrard was not at fault, judgment could not be entered against Lawson, thus, Lawson could never be one of the "defendants against whom judgment is entered". Although subsection (1) requires the trier of fact to determine Lawson's percentage share of the total fault, no judgment could be entered against Lawson because he had prevailed in his individual defense against Gerrard. Because Lawson does not fall under any of the listed exceptions set forth in RCW 4.22.070(1)(a) or (1)(b), he contends that we must interpret the statute in accord with its literal terms and conclude that, as a matter of law, the liability of Craig and Lupis is several only. By the terms of RCW 4.22.070(2), it is only if *a defendant is jointly and severally liable under one of the exceptions listed in subsections (1)(a) or (1)(b)* that such defendant may seek contribution under RCW 4.22.040, .050 and .060. Moreover, under RCW 4.22.040, .050 and .060, con-

---

[6]Insofar as we can determine from the record, Craig is only vicariously liable, based upon his ownership of the car being driven by Lupis. Accordingly, we treat Craig and Lupis as a single entity for purposes of this analysis.

tribution is only available to persons who are jointly and severally liable upon the same indivisible claim for the same injury.

RCW 4.22.030 provides that:

> *Except as otherwise provided in RCW 4.22.070*, if more than one person is liable to a claimant on an indivisible claim for the same injury, death or harm, the liability of such persons shall be joint and several.

(Italics ours.) Enacted by Laws of 1981, ch. 27, § 11; amended by Laws of 1986, ch. 305, § 402. Although Craig and Lupis clearly would have been able to seek contribution under the 1981 tort reform act,[7] because the 1986 act amended RCW 4.22.030 to add the italicized exception above indicated, Lawson contends that only those persons who are jointly and severally liable *as defined by RCW 4.22.070* may now seek contribution under RCW 4.22.040, .050 and .060.

Craig and Lupis argue that, on the facts of this case, the Legislature cannot have intended this result. We agree, but for somewhat different reasons than argued by Craig and Lupis.[8]

RCW 4.22.070(1) is based on the premise that sufficient evidence can be presented from which a trier of fact can

---

[7]*See Smith v. Jackson*, 106 Wn.2d 298, 721 P.2d 508 (1986). *Smith v. Jackson, supra*, was decided under the 1981 act. Lawson argues that this case is no longer authoritative, after the enactment of the 1986 act.

[8]Ordinarily, an appellate court will not decide a case based on a theory not argued by the parties, especially when such a theory has not been raised before the trial court, and particularly where a reversal is required. We do so in this case based on our "inherent authority to consider issues which the parties have not raised if doing so is necessary to a proper decision." *Falk v. Keene Corp.*, 113 Wn.2d 645, 659, 782 P.2d 974 (1989). *See also Bennett v. Hardy*, 113 Wn.2d 912, 918, 784 P.2d 1258 (1990); *cf. Port of Edmonds v. Northwest Fur Breeders Coop., Inc.*, 63 Wn. App. 159, 164-65, 816 P.2d 1268 (1991) (broad public interest requires that we exercise our discretion to properly determine an issue of first impression raised for the first time on appeal), *review denied*, 118 Wn.2d 1021 (1992). Moreover, this court sought additional briefing on a closely related issue, as provided by RAP 12.1(b). Although not directly related to the dispositive issue on appeal, this additional briefing helped to guide this court to the reasoning and to the law which we consider to be dispositive.

rationally determine "the percentage of the total fault which is attributable to every entity which caused the claimant's damages . . .." However, fault cannot be determined independently from the determination of causation, as was recognized by the Legislature in the enactment of RCW 4.22.015, defining "fault" ("[l]egal requirements of causal relation apply both to fault as the basis for liability and to contributory fault"). RCW 4.22.015 also provides that:

> A comparison of fault for any purpose under RCW 4.22.005 through 4.22.060 shall involve consideration of both the nature of the conduct of the parties to the action *and the extent of the causal relation between such conduct and the damages.*

(Italics ours.) Enacted by Laws of 1981, ch. 27, § 9.[9]

Under RCW 4.22.070(1), where a factual basis can be found for some rough practical apportionment which limits a defendant's liability to that part of the harm of which that defendant's conduct has been a cause in fact, several liability is appropriate. But where no such factual basis can be found, no ingenuity can suggest anything more than an arbitrary apportionment. *See* W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* § 52, at 347 (5th ed. 1984).

The Supreme Court of Michigan dealt with a similar problem in the case of *Maddux v. Donaldson*, 362 Mich. 425, 108 N.W.2d 33 (1961), not in the context of a statute such as RCW 4.22.070, but in the context of previous Michi-

---

[9]RCW 4.22.015 was not amended by the 1986 tort reform act to include RCW 4.22.070 in the list of sections to which RCW 4.22.015 applies. We conclude that this omission was by oversight rather than design, in that the overriding purpose of RCW 4.22.070(1) is to require the apportionment of fault *so that a party's proportionate share of the claimant's total damages can be determined.* RCW 4.22.070(1) embodies the Legislature's policy determination that, as a general rule, a person should not be made to pay more than his or her fair share of a claimant's total damages. Accordingly, when a trier of fact determines that the conduct of an entity has been a cause of some damage to the claimant, it must determine the percentage of the total fault which is attributable to that entity. RCW 4.22.015 logically applies to this determination, both as a matter of factual analysis and as a matter of law.

gan case law by which a plaintiff who could not distinguish between the injuries received at the hands of one tortfeasor, as opposed to another, could recover from neither. *Maddux*, like the instant matter, arose from a chain collision of vehicles on a highway and injuries resulting from successive impacts which to all intents and purposes were concurrent.

> The challenging situation is the one before us, involving 2 substantial impacts with multiple injuries, in respect of which a jury would be well justified in concluding that the plaintiff's various injuries may not be identified as to origin. As a matter of fact it may be utterly unrealistic to insist that the plaintiff is suffering merely from a series of wounds, separable either legally or medically. Actually the plaintiff may suffer from a composite injury, the ingredients of which are impossible to identify in origin and impracticable to isolate in treatment. Thus in the case before us, was the blood in the urine the result of the first impact or the second? Will the psychiatric treatment be related to the fracture of the femur, or to the multiple lacerations of the face, with its "jagged facial scars," or to the overall condition?
>
> . . . It is our conclusion that if there is competent testimony, adduced either by plaintiff or defendant, that the injuries are factually and medically separable, and that the liability for all such injuries and damages, or parts thereof, may be allocated with reasonable certainty to the impacts in turn, the jury will be instructed accordingly and mere difficulty in so doing will not relieve the triers of facts of this responsibility. This merely follows the general rule that "where the independent concurring acts have caused distinct and separate injuries to the plaintiff, or where some reasonable means of apportioning the damages is evident, the courts generally will not hold the tortfeasors jointly and severally liable."
>
> But if, on the other hand, the triers of the facts conclude that they cannot reasonably make the division of liability between the tort feasors, . . . we have . . . nothing more or less than an indivisible injury, and the precedents as to indivisible injuries will control.

(Footnotes omitted.) *Maddux*, at 431-33.

The *Maddux* court recognized that in the typical chain collision circumstance,

> [t]here has been no breach of any "joint" duty owed the plaintiffs by the 2 automobile drivers who successively collided with their car. Obviously the two did not act in concert. Nor is the

joint enterprise doctrine applicable, nor master-servant, nor principal-agent.

*Maddux*, at 429. Nevertheless, chain collisions in quick succession are a recognized exception to the normal rules of several liability because "[c]ertain results, by their very nature, are obviously incapable of any reasonable or practical division." *Prosser and Keeton*, at 347 n.22 (citing *Maddux*).

The Washington Legislature clearly recognized three of the common law exceptions to pure several liability, that of tortfeasors acting "in concert" and the "master-servant" and "principal-agent" exceptions. RCW 4.22.070(1)(a). The Legislature also fashioned an additional, limited exception in RCW 4.22.070(1)(b) (where the claimant is not at fault "the defendants against whom judgment is entered shall be jointly and severally liable for the sum of their proportionate shares of the claimant[']s total damages."). Our task is to ascertain whether the Legislature intended, for purposes of the typical chain collision situation, (1) to empower triers of fact to make arbitrary determinations based on no factual evidence, or insufficient factual evidence, in apportioning fault; or (2) to retain an additional recognized common law exception, *i.e.*, to retain joint and several liability *where there is insufficient factual evidence upon which to base a determination of the percentage of total fault attributable to each entity which caused the claimant's damages.*

■ The former interpretation is both abhorrent and absurd, for it would deprive litigants of any opportunity for meaningful appellate review and it would usurp the role of the trial judge in determining whether there is sufficient evidence to submit such issues to the jury. It would also usurp the court's authority to consider the entry of judgment n.o.v. following what, in any given case, might be a patently absurd verdict based on the evidence in that case.

■ We therefore conclude that the Legislature must have intended to retain joint and several liability *in cases where there is insufficient factual evidence upon which a trier of*

*fact could rationally determine the percentage of the total fault which is attributable to two or more tortfeasors.* This conclusion is implicit in the language of RCW 4.22.070(1), for the "percentage of the total fault which is attributable to every entity which caused the claimant's damages" *cannot* be determined absent sufficient factual evidence upon which to make such a determination. Moreover, the percentage of total fault attributable to a given entity must necessarily relate to the causal relation between that entity's conduct and the injury to the claimant. RCW 4.22.015.

> Certain results, by their very nature, are obviously incapable of any reasonable or practical division. Death is such a result, and so is a broken leg or any single wound, the destruction of a house by fire, or the sinking of a barge. No ingenuity can suggest anything more than a purely arbitrary apportionment of such harm. Where two or more causes combine to produce such a single result, incapable of any reasonable division, each may be a substantial factor in bringing about the loss, and if so, each is charged with all of it. Here again the typical case is that of two vehicles which collide and injure a third person. The duties which are owed to the plaintiff by the defendants are separate, and may not be identical in character and scope, but entire liability rests upon the obvious fact that each has contributed to a single result, and that no reasonable division can be made.

(Footnotes omitted.) *Prosser and Keeton* § 52, at 347.

In cases of clearly established double fault, there should be no practical difficulty, under RCW 4.22.070, with the requirement that the trier of fact apportion fault, in cases where the claimant is without fault and where both culpable "entities" are before the court. In those cases, there will be joint and several liability pursuant to RCW 4.22.070(1)(b) regardless of any absence of factual evidence upon which to base a determination as to apportionment of fault. But in cases such as the present appeal, where one of the entities is absent from the court proceeding, such a lack of evidence must lead to one of two results: either the plaintiff cannot recover at all; or the defendant who is available must be found liable for the entire harm. We do not believe that the Legislature intended the former result. Accordingly we hold,

as did the court in *Maddux*, at 432-33, that where the trier of fact must necessarily conclude that it "cannot reasonably make the division of liability between the tort-feasors . . . we have . . . nothing more or less than an indivisible injury, and the precedents as to indivisible injuries will control." In such a case, the available defendant will be jointly and severally liable.

■■ Whether we are dealing with such a situation in the instant appeal is unclear from the record before us. We have no information as to the nature of Gerrard's injuries or as to the relative speeds of the Lupis and Lawson vehicles or as to any other similar evidence from which we could infer that it is possible, in this case, to apportion Gerrard's damages based on the percentage of the total fault which is attributable to Craig-Lupis and to Lawson. The record only reflects that this was a multiple-car accident whereby the Craig-Lupis vehicle rear-ended the vehicle in which Gerrard was riding, after which, with no appreciable lapse of time, Lawson's vehicle rear-ended the Craig-Lupis vehicle, forcing it again into the rear of the Gerrard vehicle. We can reasonably infer, based on these undisputed facts, that it may be difficult, if not impossible, to apportion fault. Both Lupis and Lawson, as following drivers, had identical, independent duties under Washington law. A following driver is negligent as a matter of law when he collides with a preceding vehicle, unless the preceding vehicle stops suddenly and without warning at a place where a sudden stop is not to be anticipated. *Ryan v. Westgard*, 12 Wn. App. 500, 504, 530 P.2d 687 (1975). This being a summary judgment proceeding, Craig and Lupis are entitled to the benefit of all reasonable inferences which can be drawn from the undisputed facts. *Sea-Pac Co. v. United Food & Comm'l Workers Local Union 44*, 103 Wn.2d 800, 802, 699 P.2d 217 (1985).

Here, there is certainly the *potential* for joint and several liability between Craig-Lupis and Lawson, and that is all that is needed to create the right to seek contribution under the 1981 and 1986 tort reform acts. Harris, *Washington's*

*1986 Tort Reform Act: Partial Tort Settlements After the Demise of Joint and Several Liability*, 22 Gonz. L. Rev. 67, 84 (1986-1988).

Craig and Lupis have relied heavily upon the case of *Smith v. Jackson*, 106 Wn.2d 298, 721 P.2d 508 (1986). In *Smith*, the plaintiff Smith and defendant Jackson were involved in a car accident. Five days before the statute of limitations expired, Smith filed suit against Jackson. After the statute of limitations expired, Jackson filed a third party complaint against Pierce County. Pierce County moved for summary judgment, arguing that, because the statute of limitations had run on the original action when Smith could have sued the County and because the County could not be held liable to Smith, Jackson did not have a right of contribution against the County. The trial court granted the County's motion for summary judgment.

On appeal, the Supreme Court reversed the grant of summary judgment, holding that a joint tortfeasor may bring an action for contribution against another joint tortfeasor,

> after the original statute of limitations has run as long as the original claim was timely filed. All that is required to maintain a contribution action is that it is brought within 1 year of settlement of a pending cause of action.

*Smith*, 106 Wn.2d at 304; *see also* RCW 4.22.050(3). The court reasoned that to hold otherwise "would be to allow the plaintiff to pick and choose among joint tortfeasors to determine which defendants should bear the entire loss without contribution." *Smith*, 106 Wn.2d at 301. This holding, noted the court, was also consistent with the Legislature's intent behind the 1981 tort reform act. *Smith*, 106 Wn.2d at 303. The legislative history of the bill discussing the requirements to receive contribution revealed the following intent:

> . . . All that is required to start an action for contribution is that the party must allege that he has paid more than his proportionate share of the fault. The party seeking contribution must have either discharged the common liability within the statute of limitations and commenced an action for contribution within one year of that payment, or have agreed while the action was pending to discharge that lia-

bility and within one year both paid the claimant and commenced this action for contribution.

(Italics omitted.) *Smith*, 106 Wn.2d at 303 (quoting Senate Journal, 47th Legislature (1981), at 636).

When the Supreme Court decided *Smith*, however, RCW 4.22.070 was not effective. Accordingly, Lawson argues that *Smith* is no longer authoritative. We disagree. For so long as there is the *potential* for joint and several liability, as there is in this case, we hold that *Smith* is still good authority, notwithstanding the enactment of the 1986 tort reform act.

### IV

We reverse the trial court's summary dismissal "with prejudice" of the appellants' claim for contribution and the trial court's denial of appellants' motion to set aside that portion of the summary judgment order of September 20, 1989, which dismissed the cross claim "with prejudice". We remand for a resolution of appellants' claim for contribution pursuant to RCW 4.22.040, .050 and .060.

WEBSTER, A.C.J., and BAKER, J., concur.

Review granted at 120 Wn.2d 1025 (1993).