MIGUEL A. MÁRTIR SANTIAGO, Plaintiff and Appellee, *v.* PUEBLO SUPERMARKET OF DE DIEGO, INC., JOSÉ RODRÍGUEZ COLÓN and SPECIAL AGENTS INVESTIGATORS, INC., Defendants and Appellants the latter two.

No. R-62-39. Decided April 29, 1963.

*Marcos & Bernier, Enrique Igaravídez,* and *Raymond L. Acosta* for appellants. *C. Andréu Ribas* for appellee.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

José Rodríguez Colón and Special Agents Investigators, Inc., designated hereinafter "Investigators", filed a petition in this Court to review the judgment that adjudged them solidarily and jointly liable with Pueblo Supermarkets of De Diego, Inc., named hereinafter "Pueblo", José Martí Fuentes and Israel Hernández, for damages caused to appellee, Miguel A. Mártir Santiago.

The facts that gave rise to the suit in this case are the following:

On December 24, 1958, about 7:00 p.m. appellee and his wife went to the supermarket "Pueblo" and parked their car in the parking area. Mártir Santiago entered the establishment, bought groceries for the amount of $24.12, including two salamis, paid the bill and took the groceries to the car where his wife was waiting. He went back to the supermarket to buy some razor blades that he needed, and while so doing he was eating one of the sausages he had bought. Appellee testified that while he was paying for the razor blades to the cashier, he was violently grasped by Israel Hernández, a "Pueblo" employee. The latter, as well as the other defendants in the case at bar, José Martí Fuentes and Rodríguez Colón, testified that Hernández stopped appellee after he came out of the supermarket and was going towards the parking area. The evidence shows that Hernández requested and obtained aid of Rodríguez Colón to take appellee inside the supermarket until they made him go through the turnstile. Appellee was taken to a small warehouse room of the supermarket. The evidence is contradictory as to the author of the blow that appellee received on his eye, but the trial court decided that appellee received such blow from Rodríguez Colón. (Finding of fact, No. 8.) In the aforesaid room appellee was handed to policeman Corbet, who testified that he investigated the incident and as a part of that investigation Rodríguez informed him that he (Rodrí-

guez) "had seen the supposed plaintiff (that is, the appellee) who went outside and saw when a bottle fell from under his shirt and that he helped someone else to take him inside." (T.E. pp. 345, 351, 433.) Appellee was taken to the police wagon and carried therein to the Police Station on Loíza Street where he was put into the cage for the arrested; then he was taken out and conveyed to the residence of Justice Veray Torregrosa who attended to the affair from the stairs as he came down from his residence upstairs. (T.E. pp. 160, 496.) Defendant Martí Fuentes, who knew Justice Veray, had arrived earlier at his residence and was by his side when the judge ordered appellee's commitment in jail for the offense of petit larceny and fixed a bail bond of $200 (T.E. p. 160). Appellee was returned to the municipal jail, where he stayed until an acquaintance lent him the amount of the fixed bail bond premium, which he paid to remain at liberty after one or two hours of being confined.

The trial court made the following additional findings of fact which, in our judgment are supported by the evidence:

"12.—That night there was no party at plaintiff's home, but the natural anxiety and excitement due to the arrest of the head of the family without knowing his whereabouts, until they saw him arrive at dawn, all bruised and with his clothes bloodstained, the face swollen and his body and arms aching, depressed and nervous, and without being able to explain the cause of his absence to relatives and neighbors who were invited for supper on Christmas Eve.

13.—That the news of plaintiff's arrest, and the charge against him was made public by the morning reporter, 'Radio-Reloj'; it came to the knowledge of friends and strangers, as well as of plaintiff's office, his clients and competitors in insurance, and all of it caused embarrassing situations to plaintiff.

14.—The trial of the criminal prosecution filed through defendants' efforts in the name of the People of Puerto Rico against plaintiff (Criminal Case No. 59-478, of District Court, San Juan Part) was held months later in court presided by

Judge Pablo Morales, and at said hearing the codefendants José Martí Fuentes, Israel Hernández and José Rodríguez Colón, testified as witnesses for the prosecution, charging him on this occasion, not only with the stealing of the salami but also with the stealing of a bottle of liquor 'Vat 69' which, according to them, plaintiff tried to steal by concealing it under his sport shirt and fastened by his belt, which upon being discovered by them caused plaintiff's arrest and in struggling with him the bottle fell out and was broken. Neither the salami nor the pieces of glass were produced in evidence at said hearing, and with the sole testimony of the plaintiff, and the receipt slip that he produced to prove that he had paid for the salami, he was acquitted, after suffering the humiliation of being tried in public for a denigrating offense."

Said court also found:

"19.—That from the evidence as a whole we can decide that Israel Hernández as well as Martí Fuentes were negligent and guilty of a false appreciation of the facts and the former, in seeing Mártir Santiago eating part of the salami, which he then put into his pocket, thoughtlessly, without further inquiry and without using the proper means to determine whether the plaintiff had paid for the salami or, in fact, had stolen it, he chose to attack him, and start the commotion that gave rise to the intervention, also unforeseen and abusive, of the manager and the special agent of codefendant, who instead of limiting his intervention to holding plaintiff with the help of Hernández, he struck him violently on his face. We do not doubt that Special Agents Investigators, Inc., was negligent and guilty of having stationed in said establishment on such busy days, codefendant Rodríguez Colón, a man of little experience and stupid, which fact was evident or should have been evident to said Investigators, for at that time he was on a trial period. After the incident it appears that Special Agents Investigators, Inc., dispensed with the services of said agent.

20.—That the participation of codefendant Special Agents Investigators, Inc.'s employee was limited to holding and attacking plaintiff as aforesaid, and to pushing him violently to the rear of the establishment of Pueblo de Diego, and although he testified in the criminal cause filed against Mártir Santiago it does not appear that he took any steps to procure the arrest or

the filing of the complaint against plaintiff. Although we hold that he is liable for his participation in the acts that caused damages to the complainant, it is fair to adjust the compensation which corresponds to him for his individual acts taking in consideration the scope of his employment and all other circumstances and facts proved."

There was proof of the care exercised by "Investigators" in selecting its personnel and specifically in the case of Rodríguez Colón (T.E. pp. 250, 251, 252) ; that he rendered good service (T.E. p. 298) ; that the scope of the latter's work at the time of occurrence of the facts that gave rise to the claim in the case at bar was "to be stationed at the door watching the children", that if any person committed an irregular act his duty was to notify the manager of the supermarket. (T.E. pp. 196–197, 252, 255, 266, 267, 269.)

Against the judgment ordering the defendants solidarily and jointly to pay the appellee the sum of $25,000 for damages, $500 paid by the appellee to defend himself in the criminal suit, $3,000 for attorney's fees, plus costs, Pueblo Supermarket of De Diego, Inc., José Martí Fuentes and Israel Hernández, on one side and "Investigators" and Rodríguez Colón on the other, filed a petition for review in this Court. We denied the former's petition on April 25, 1962 and decided to review said judgment upon petition by the latter on September 19 of said year.

Appellants assign the errors that we analyze below:

"FIRST ERROR: The respondent court committed error in deciding that defendants José Rodríguez Colón and Special Agents Investigators, Inc., were related to the charges that plaintiff had committed a public offense, there being no evidence to that effect and the sole participation of the defendant José Rodríguez Colón in accordance with the evidence most favorable to the plaintiff, being that said defendant attacked the plaintiff."

■ It is obvious from the previous facts related that the trial court made no error in deciding that Rodríguez Colón was related to the charges that plaintiff had committed a public offense, for evidence of such charges was introduced by Rodríguez Colón that justified such conclusion (T.E. pp. 345–351, 433 and 99–100). Further on we shall discuss the liability of appellant Special Agents Investigators, Inc., for such acts of its agent, Rodríguez Colón.

"SECOND ERROR: The respondent court committed an error of law in deciding the liability of Special Agents Investigators, Inc. for José Rodríguez Colón's acts in spite of the unquestionable proof that said employer used all the diligence of a good father of a family to avoid the damage."

Appellants argue that "Investigators" used all the diligence of a good father of a family in selecting and training its agent, Rodríguez Colón, and posted him at the supermarket in question with instructions and authority in harmony with their agreement with the management of said business of furnishing a watchman "near the door or exactly at the door to watch, because many children enter the supermarket without father or mother, alone . . . but the instructions are 'no child can enter without father or mother.' " (T.E. p. 255); that part of these instructions were that "if any person, not a child, commits an irregular act . . ." Rodríguez Colón's duty was "to report it to the manager of the supermarket." Said watchman testified that he could not interfere directly in such a case. (T.E. pp. 196–197.) Under such circumstances, appellants insist that Rodríguez Colón, in helping to arrest appellee and in testifying against him did not act within the scope of his duties as agent of "Investigators" and, for such reasons, the latter is not responsible for his acts according to § 1803 of the Civil Code in force (31 L.P.R.A. § 5142).

Appellants base this contention on two groups of our decisions, one to the effect that to hold the employer liable the employee must have acted within the scope of his employment and duties as such, and the other in the sense that the liability of the employer shall cease if he has employed "all the diligence of a good father of a family to avoid the damage." As a part of the first group they cite the cases of *Vigio* v. *Cartagena*, 71 P.R.R. 665 (1950); *Burgos* v. *Sobrinos de Villamil*, 41 P.R.R. 85 (1930); *Vélez* v. *Armstrong Bros.*, 40 P.R.R. 680 (1930); *Torres* v. *J. Lema & Co.*, 36 P.R.R. 72 (1926); and *Martínez* v. *Trujillo & Mercado*, 24 P.R.R. 271 (1916). The first three cases deal with vehicle drivers who were not acting within the scope of their employment, but for their own benefit, and really were not agents of the defendant party. In the other two cases we decided that a commercial or agricultural enterprise is not liable for the criminal acts performed by their employees when the act is neither within the scope of their employment or in the performance of their duties. The second group comprises the cases of *Castro* v. *González*, 58 P.R.R. 369 (1941); *Maldonado* v. *P.R. Drug Co.*, 31 P.R.R. 709 (1923) and *Vélez* v. *Llavina*, 18 P.R.R. 634 (1912). In the first two cases cited we said it is not sufficient to prove that careful and competent employees were chosen; it must be proved besides that the care and diligence necessary to avoid the injury were exercised.

■ The doctrine in the preceding cases is not applicable to the case at bar, because the evidence shows very different circumstances, that is, Rodríguez Colón did not act for his own benefit but rather for the benefit of his employer. In our judgment there was a reasonable and pertinent relation between the acts of Rodríguez Colón, of which the appellee complains, and "Investigator's" interests. The former's acts tended reasonably to carry out the ultimate objective of the employer; that is, his services to the management of the

supermarket. *Martínez v. U.S. Casualty Co.,* 79 P.R.R. 561 (1956); *González v. Compañía Agrícola,* 76 P.R.R. 373 (1954); *Vázquez v. People,* 76 P.R.R. 556 (1954); Prosser, Law of Torts 351–354; Restatement of the Law, Agency 2d, § 235.

Thus we decide that "Investigators" was not free from liabilities for said acts of his agent Rodríguez Colón and that the trial court did not commit this second error.

"THIRD ERROR: The respondent court erred in ordering the defendants-appellants to pay solidarily with the rest of the defendants the amount of the judgment and erred in ordering the appellants to pay costs and attorney's fees also solidarily."

"FOURTH ERROR: The respondent court erred in ordering the defendants-appellants to pay the amount of $25,000 for damages, plus $500, plus $3,000 for attorney's fees when:
 (A) In finding of fact No. 20 the respondent court decided that the liability of the appellants to the plaintiff was limited and
 (B) in fact, said judgment deprives the appellants of their property without due process of law and contrary to the evidence considered as conclusive by the respondent court."

The appellants point out that in the finding of fact No. 20, the trial court decided that the participation of the codefendant Rodríguez Colón "was limited to holding and attacking the plaintiff . . . and although he testified in the criminal cause filed against Mártir Santiago, it does not appear that he took any steps to procure the arrest or the filing of the complaint against plaintiff."

 Although it is true that the general rule is that when an injury is the result of the combined negligence of several persons, said persons are jointly and severally liable

to the aggrieved party (*Prado* v. *Quiñones*, 78 P.R.R. 309, 330 (1955)) and that said damages may not be apportioned among the wrongdoers. (I Harper & James, Law of Torts 692 and 698–701; 8 A.L.R.2d 862), the evidence in this case undoubtedly shows that the combined acts of appellants and "Pueblo" and its agents consisted only in the detention and attacks on appellee. The acts and steps taken exclusively by "Pueblo" and its agents that gave cause to the arrest, the imprisonment, filing of complaint and trial, constitute wrongful acts, misbehavior that caused grave compensable damages to the appellee, severally and independently from said joint action, which also caused compensable damages to appellee. Although the trial court said so in finding of fact No. 20, however, it did not specify the amount of the damages caused by one act or the other; but, on the contrary, it decided the total amount of the damages caused, and held the appellants liable thereof jointly and solidarily with "Pueblo" and its agents. In furtherance of justice and in a case like this, we believe that it is proper to decide the liability of the appellants in relation to their acts which clearly appear from the record and that it is not proper to hold them liable for separate and distinct acts of others which caused other and additional damages to the appellee. *Maddux* v. *Donaldson*, 108 N.W.2d 33, 37 (Mich. 1961); Harper & James, *supra*, at 694, 707; *Griffith Company* v. *San Diego College for Women*, 280 P.2d 203, 213 (Cal. 1955). Therefore we conclude that under the circumstances of the case, the amount of the damages caused appellee for the joint acts of appellants and "Pueblo" and its agents the amount is $5,000 within the total amount for damages fixed by the trial court in this case of $25,000, and, by virtue thereof, the appellants should only answer solidarily and jointly with "Pueblo" and its agents for the amount of $5,000 for damages caused to appellee and the amount of $600 for attorney's

fees. The appellants are in no way liable for $500 paid by appellee in the criminal cause.

"FIFTH ERROR: The respondent court erred in refusing to give credit to a stipulation of facts of the parties and in deciding, as a matter of fact, that plaintiff was confined in jail several hours."

■ The contention of the appellants in support of this assignment of error is directed toward the weighing of the evidence by the trial court. From our examination of the record and the extensive transcript of evidence adduced in the case at bar we decide that the trial court was justified in giving credit to a part of the stipulation in relation to the testimony of Mr. Veray; that is, that it believed that no material evidence or stolen article was produced before said magistrate (Finding of Fact, No. 10), and it did not believe the part of the stipulation to the effect that said judge did not see the blow that the appellee suffered. (T.E. pp. 469–470.) Therefore, in our judgment it did not commit this error.

The judgment appealed from should be modified so as to limit the joint and solidary liability of the appellants to $5,000 of the total amount fixed for damages suffered by the appellee, to $600 for attorney's fees and the appellants should be released of the liability for the amount of $500 paid by appellees to defend themselves in the criminal cause. As thus modified, it should be affirmed in relation to the appellants.