Robert SHUNK, Plaintiff-Appellant,

v.

Ralph BOSWORTH and Robert Bunyard,
Defendants-Appellees.

No. 15278.

United States Court of Appeals
Sixth Circuit.

July 8, 1964.

Michael J. Kelly, Detroit, Mich., Kelly, Oster & Brennan, Detroit, Mich., on brief for appellant.

Konrad D. Kohl, Detroit, Mich., Carl F. Davidson, Detroit, Mich., for Ralph Bosworth.

John Feikens, Detroit, Mich., Feikens, Dice, Sweeney & Sullivan, Detroit, Mich., on brief, for Robert Bunyard.

Before MILLER and O'SULLIVAN, Circuit Judges, and McALLISTER, Senior Circuit Judge.

McALLISTER, Senior Circuit Judge.

Plaintiff-appellant was injured by shotgun fire while hunting. Pellets penetrated his right eye and right hand. At the time of the injury, he was engaged with a group of companions in a bird-shooting expedition. Among the members of the group were defendants-appellees, Ralph Bosworth and Robert Bunyard. John Bunyard, the father of Robert, was also in the party, as were Frank Feldt and William Atkins. The plaintiff-appellant will hereafter be referred to as plaintiff, and the defendants-appellees, as defendants.

The evidence discloses that a moment or so before plaintiff was injured, three shots were fired a short distance from him. Defendant Ralph Bosworth fired the first shot; Robert Bunyard fired the next two shots. Plaintiff stated that a fourth shot was fired. No one could testify who fired the fourth shot. Plaintiff says that it was this fourth shot that struck him, but he had no idea who fired this shot. There is an absence of testimony that either of the defendants, rather than some third person, fired the fourth shot.

At the conclusion of plaintiff's case, counsel for defendants, claiming that there was no proof of negligence on the part of Bosworth and Bunyard, moved for a directed verdict in favor of defendants. Counsel for plaintiff contended that the trial court should apply the doctrine of res ipsa loquitur, allow the jury to infer negligence on the part of either or both of the defendants; and instruct the jury that the burden of proving which defendant was guilty of negligence, under the circumstances of the case, shifted from plaintiff to defendants. The District Court granted defendants' motion to direct a verdict; entered judgment of no cause of action in their favor; and denied plaintiff's motion for a new trial. From the judgment of no cause of action, plaintiff appeals.

It appears that plaintiff was standing on a kind of hillock, or finger of land, north of the place where Bosworth and Bunyard were standing when they fired

the three shots. When defendant Bosworth's gun went off, plaintiff said "it went off in a westerly or southwesterly direction." Plaintiff was watching Bosworth at the time that he fired the first shot and said that Bosworth's gun "moved in a sort of an arc," and while being moved in the arc, it was at no time in line with plaintiff. Defendant Bunyard, according to plaintiff's testimony, was swinging his gun in the same direction as Bosworth when the second and third shots were fired. Plaintiff stated positively that the shots of the defendants were in a direction, westerly or southwesterly away from the place where he stood, which was to the north of them. The first shot by Bosworth and the next two shots by Bunyard were fired at the same bird that they had flushed.

Plaintiff, as stated, testified that he did not know who fired the fourth shot—the one that hit him. He said that he saw a first bird and that at the time he heard the second shot—the first, that is, fired by Bunyard—he heard what he thought was the whir of another bird. He said: "I thought that I heard two birds go up." Bosworth said that he did not hear or see a second bird, and there was no testimony that anyone else had heard or seen a second bird. The most that can be said with regard to the possibility that there might have been a second bird is plaintiff's testimony that he *thought* he had heard another bird after the three shots had been fired at the first bird.

Plaintiff was definite in his testimony as to the direction in which defendants swung their guns before firing at the first bird. Furthermore, he actually saw them fire the first three shots. He testified:

"Q. You told us yesterday, Mr. Shunk, about the shots that you heard. You told us about the position of Ralph Bosworth and the position of Robert Bunyard. You told us that Ralph Bosworth fired one shot, correct?

"A. This is to the best of my recollection, yes.

"Q. Didn't you tell us you saw him fire one shot?

"A. I saw him fire one shot, yes, sir.

"Q. Didn't you tell us you saw Robert Bunyard fire two shots?

"A. Yes sir."

These three shots were the ones which the plaintiff says were fired in a westerly or southwesterly direction while plaintiff was standing north of the defendants.

The Court thereafter interrogated plaintiff:

"The Court: * * * I believe you testified that there were four shots, three that you actually heard and the fourth that was simultaneous with the time that you were struck, is that correct?

"A. Yes, sir.

"The Court: You testified as to the first three shots with reference to who was doing the shooting?

"A. Yes sir.

"The Court: And the fourth shot, you are not certain who did it?

"A. That is correct, sir.

"The Court: You do not know?

"A. Yes.

"The Court: Is it your claim that any of the first three shots struck you, or is it your claim that it is the fourth shot that struck you?

"A. I feel that it is the fourth shot that struck me.

"The Court: I wanted to make that clear in my mind."

On cross-examination plaintiff testified:

"Q. Take your assumption that they shot in the direction which the bird was going, how do you account for the fact that the pellets struck you?

"A. Well, that, of course, is a mystery, the mystery of the whole thing, because I actually don't feel that the way I looked that I should have been hit.

"Q. Well, that's what I am thinking about too.

"A. Well, I am dumbfounded, just as dumbfounded as you are in that respect. I know the path of that bird, and I saw it from the time it was a foot off the ground and the direction it was going in. And that, of course, is the biggest surprise to me when I got hit, believe me. * * Yes, I was dumbfounded that I was struck, as I did not feel that I was in the line of fire."

Mr. Feldt, who was called as a witness on behalf of plaintiff, testified that he had heard two shots, "for sure," but there might have been more than two. Mr. Atkins testified that he had heard three shots fired, very close together. John Bunyard, who was standing on the high ground near plaintiff at the time, testified that he heard three shots fired. The first shot, he said, was fired by Ralph Bosworth, and John Bunyard then saw Robert Bunyard fire two shots. He watched Bunyard shooting over his left shoulder. He further testified that plaintiff was struck after the three shots were fired— not, however, simultaneously, by any of the three shots, but a short time thereafter. He was unable to say whether he had heard a fourth shot.

Plaintiff had called as witnesses for cross-examination under the Michigan statute, the two defendants and John Bunyard, and, according to the Michigan rule, plaintiff is bound by their testimony unless it is contradicted; but there is no testimony even on the part of plaintiff himself contradicting these witnesses. In fact, plaintiff's testimony is generally to the same effect, and, as we view it, appears to be the strongest evidence against his claim that defendants were negligent.

It is true that there was some vagueness or contradiction in the testimony, but that vagueness or contradiction, on controlling and relevant points, is only to be found in the testimony of plaintiff himself, when, for instance, after he had testified that defendants pointed their guns in a stated direction and shot in that direction, testified:

"Q. But you really don't know the direction in which they pointed their guns and in which direction the shot went?

"A. That's right, I couldn't say."

This kind of testimony did not present an issue for the jury on the question of defendants' negligence.

There is no evidence of any negligence on the part of either of the defendants. To hold one of the defendants, or both of them, guilty of negligence in shooting the plaintiff, would be only wild speculation on the part of the jury. There is a complete lack of testimony or evidence from which the negligence of the defendants could be inferred.

It is the claim of counsel that the burden of proof, because of the evidence, shifted from plaintiff to defendants, and that the burden is upon them to show that they are free from negligence. But plaintiff does not indicate what negligence they must disprove. In fact, the testimony of plaintiff indicates that defendants were exercising due care at the time of the accident. They swung their guns in an arc away from plaintiff and shot in a direction opposite to where plaintiff was standing. There is no evidence that defendants were careless or negligent in any of their actions. When he was struck by the pellets, plaintiff himself was dumbfounded. It was the "biggest surprise" to him, "as I did not feel that I was in the line of fire." He saw defendants swinging their guns to the south and west and saw them fire three shots in a direction opposite to where he was standing, a second or so before he was hit by the fourth shot. Plaintiff could not figure out how the shot that hit him could have come from defendants' guns. Nor can we, from plaintiff's testimony, and from the defendants' testimony, figure how plaintiff could have been hit right after the first three shots by a fourth shot from the gun of one of the defendants.

**312**

Defendant Bunyard, on the day of the accident, had heard other shots in the distance. Plaintiffs knew that other people were hunting. He had heard shots from other guns, mentioning that you could hear a shot a mile or so away.

In order for the jury to find that one or both of the defendants were guilty of negligence in firing the shot that struck plaintiff, they would be obliged to disregard all of the testimony of the plaintiff and of the defendants and all of the other witnesses, reconstruct an imaginary case out of unproved facts, and, as a result of a guess, conclude that, because there was an injury to the plaintiff, one of the defendants inflicted it. Plaintiff himself stated that in his opinion Bosworth and Bunyard were competent hunters. Five weeks after the accident, plaintiff went deer hunting with defendant Bunyard, and continues to regard him as a good, careful hunter.

We find no basis or authority in this case for holding that the burden of proof shifted from plaintiff to defendants, or for applying the doctrine of res ipsa loquitur as it is generally interpreted, or in accordance with the version of the doctrine as interpreted by the Supreme Court of Michigan. There was no evidence from which inferences could be drawn that either or both of the defendants were guilty of negligence resulting in plaintiff's injury. We find no error in the District Court's directing a verdict in favor of defendants.

The fact that there was no evidence of any negligence on the part of the defendants makes inapposite cases cited by plaintiff, such as Ackerberg v. Muskegon Osteopathic Hospital, 366 Mich. 596, 115 N.W.2d 290; and McCullough v. Ward Trucking Co., 368 Mich. 108, 117 N.W.2d 167. Summers v. Tice, 33 Cal.2d 80, 199 P.2d 1, 5 A.L.R.2d 91 was a hunting case, where defendants were shooting at a quail *and shot toward plaintiff*. In the Summers case, the real difficulty was in apportioning the damages between the negligent defendants, as was the case in Maddux v. Donaldson, 362 Mich. 425, 108 N.W.2d 33. We find these cases inapplicable to the controversy before us.

In accordance with the foregoing, the judgment of the District Court is affirmed.